<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SAMARY RIVERA,<br><br>        Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>        Defendant. | Civil Action No. 15-1447(JLL)<br><br>**OPINION** |

**LINARES**, District Judge.

This matter comes before the Court upon the appeal of Samary Rivera ("Plaintiff") from the final decision of the Commissioner upholding the final determination by Administrative Law Judge ("ALJ") Barbara Dunn denying Plaintiff's application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). ALJ Dunn found that Plaintiff did not have a disability under the Act from May 20, 2009 to the time of the decision.

The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g), and resolves this matter on the parties' briefs pursuant to Local Civil Rule 9.1(f). After reviewing the submissions of both parties and for the following reasons, this Court remands the matter to the ALJ for further consideration.

**I.      BACKGROUND**[1]

      **A.      Factual History**

---

[1] "R." refers to the Administrative Record, which uses continues pagination and can be found at ECF No. 6.

Plaintiff was born on April 15, 1971. (R. 29.) She received a formal education through the seventh grade. (*Id.*) At the hearing in this matter on July 1, 2013, Plaintiff testified that she lives with three of her children, two of whom are autistic. (*Id.* 36-37.) She stated that she suffers from Attention Deficit Hyperactivity Disorder ("ADHD"), which has made it difficult for her to work and hold down a job. (*Id.* 31.) Plaintiff also testified that her ADHD makes it difficult to "understand certain things" and that it also causes her to be "forgetful" and to not "get things done." (*Id.* 35.) She provided the ALJ with an example of this forgetful behavior, stating that "[i]f I start cooking . . . rice, I walk away and I forget that it's on the stove and my daughter is like, mom, you left . . . the rice cooking." (*Id.* 36.) Plaintiff takes medication to treat her ADHD. (*Id.* 35, 45.) Plaintiff also reported that she gets panic attacks. (*Id.* 33-34.) She testified that these panic attacks occur both at home and when she is outside her home. (*Id.*) Plaintiff testified that the panic attacks happen roughly three times per week and generally last between twenty and thirty minutes. (*Id.* 34-35.) In addition to the panic attacks and ADHD, Plaintiff also testified that she has diverticulitis, "a gallbladder issue" that requires surgery, asthma, and back pain. (*Id.* 42-43, 44, 47.)

Plaintiff also testified that she had been receiving treatment from Dr. Castillo at the University Behavioral Health Care ("UBHC") once a month for about two years. (*Id.* 38-39.) She claimed that she sees Dr. Castillo "just for prescription medication," and that he also treats her two sons and her daughter. (*Id.* 39, 40.) Plaintiff also sees Mr. Henry, a therapist at UBHC. (*Id.* 39.) Plaintiff reported that she had been seeing Mr. Henry once a month for two years. (*Id.* 39-40.) She testified that she was referred to these health professionals by the "people helping my son . . . so [that] I could be able to function, [and] be able to do the things that I have to do." (*Id.* 40.)

2

Plaintiff stated that the diverticulitis has caused her to lose weight because of her restricted diet and that the medication she takes to treat the condition had given her side effects. (*Id.* 43.)

Plaintiff further reported that she gets migraine headaches, and that the migraines occur twice per week and last approximately half a day. (*Id.* 45.) She said that she prefers not take Excedrin for the migraines, as it would counteract with the medications she was taking for her other medical conditions. (*Id.*)

Plaintiff testified that she worked in 2010 selling Avon products. (*Id.* 50-51.) She was also self-employed and provided childcare services from 2008-2010. (*Id.* 49-51.) Prior to 2008, Plaintiff stated that she worked at Wal-Mart, and had briefly been employed at Toys R Us. (*Id.* 49-54.)

**B.      Procedural History**

Plaintiff filed applications for Disability Insurance Benefits ("DIB") on October 3, 2011 and for Supplemental Security Income ("SSI") on October 24, 2011. (*Id.* 13.) In both of these applications, Plaintiff claimed she had been disabled beginning May 20, 2009. (*Id.*) These claims were initially denied on December 6, 2011 (*Id.* 62-72), and upon Reconsideration on May 16, 2012. (*Id.* 86-94.) Plaintiff filed a written request for a hearing, and the hearing was held on July 1, 2013. On August 22, 2013, ALJ Dunn held that Plaintiff did not have a disability as defined under the Act. (*Id.* 10-22.)

On October 19, 2013, the Appeals Council denied Plaintiff's requested review of the ALJ's decision (*Id.* 1-6) and Plaintiff thereafter commenced this action *in forma pauperis* on February 25, 2015 (ECF No. 1-2.) Both parties filed briefs in accordance with Local Civil Rule 9.1. (ECF No. 10 (Brief of Plaintiff ("Pl.'s Br.")); ECF No. 11 (Defendant's Brief Pursuant to Local Civil Rule 9.1 ("Def.'s Br.")).)

## II.    STANDARD OF REVIEW

A reviewing court will uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla but may be less than a preponderance." *Woody v. Sec'y of Health & Human Servs.*, 859 F.2d 1156, 1159 (3d Cir. 1988). It "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation omitted). Not all evidence is considered substantial. For instance,

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g. that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.

*Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). The ALJ must make specific findings of fact to support his ultimate conclusions. *Stewart v. Sec'y of Health, Educ. & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983).

The "substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). It does not matter if this Court "acting *de novo* might have reached a different conclusion" than the Commissioner. *Monsour Med. Ctr. V. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986) (citing *Hunter Douglas, Inc. v. Nat'l Labor Relations Bd.*, 804 F.2d 808, 812 (3d Cir. 1986)). "[T]he district court . . . is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing *Early v. Heckler*, 743 F.2d 1002, 1007 (3d Cir. 1984)). A Court must

nevertheless "review the evidence in its totality." *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984)). In doing so, the Court "must 'take into account whatever in the record fairly detracts from its weight.'" *Id.* (citing *Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988)).

A court must further assess whether the ALJ, when confronted with conflicting evidence, "adequately explain[ed] in the record his reasons for rejecting or discrediting competent evidence." *Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing *Brewster v. Heckler,* 786 F.2d 581 (3d Cir. 1986)). If the ALJ fails to properly indicate why evidence was discredited or rejected, the Court cannot determine whether the evidence was discredited or simply ignored. *See Burnett v. Comm'r of Soc. Sec,* 220 F.3d 112, 121 (3d Cir. 2000) (citing *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)).

## III.   APPLICABLE LAW

### A.   The Five-Step Process for Evaluating Whether a Claimant Has a Disability

A claimant's eligibility for benefits is governed by 42 U.S.C. § 1382. Pursuant to the Act, a claimant is eligible for benefits if he meets the income and resource limitations of 42 U.S.C. §§ 1382(a)(1)(A)-(B) and demonstrates that he is disabled based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A person is disabled only if his physical or mental impairment(s) are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether the claimant is disabled, the Commissioner performs a five-step sequential evaluation. 20 C.F.R. § 416.920. The claimant bears the burden of establishing the first two requirements. The claimant must establish that he (1) has not engaged in "substantial gainful activity" and (2) is afflicted with "a severe medically determinable physical or mental impairment." 20 C.F.R. § 416.920(a)(4)(i)-(ii). If a claimant fails to demonstrate either of these two requirements, DIBs are denied and the inquiry ends. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant successfully proves the first two requirements, the inquiry proceeds to step three which requires the claimant to demonstrate that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Part 404 Appendix 1. 20 C.F.R. § 416.920(a)(4)(iii). If the claimant demonstrates that his impairment meets or equals one of the listed impairments, he is presumed to be disabled and therefore, automatically entitled to DIBs. *Id.* If he cannot make the required demonstration, further examination is required.

The fourth step of the analysis asks whether the claimant's residual functional capacity ("RFC") permits him to resume his previous employment. 20 C.F.R. § 416.920(a)(4)(iv). If a claimant is able to return to his previous employment, he is not disabled within the meaning of the Act and is not entitled to DIBs. *Id.* If the claimant is unable to return to his previous employment, the analysis proceeds to step five. At this step, the burden shifts to the Commissioner to demonstrate that the claimant can perform a job that exists in the national economy based on the claimant's RFC, age, education, and past work experience. 20 C.F.R. § 416.920(g). If the Commissioner cannot satisfy this burden, the claimant is entitled to DIBs. *Yuckert,* 482 U.S. at 146 n.2.

**B.   The Requirement of Objective Evidence**

Under the Act, disability must be established by objective medical evidence. "An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the [Commissioner] may require." 42 U.S.C. § 423(d)(5)(A). Notably, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section." *Id.* Specifically, a finding that one is disabled requires:

> [M]edical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph . . . would lead to a conclusion that the individual is under a disability.

*Id.*; *see* 42 U.S.C. § 1382c(a)(3)(A). Credibility is a significant factor. When examining the record: "The adjudicator must evaluate the intensity, persistence, and limiting effects of the [claimant's] symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work-related activities." SSR 96-7p, 1996 WL 374186 (July 2, 1996). To do this, the adjudicator must determine the credibility of the individual's statements based on consideration of the entire case record. *Id.* The requirement for a finding of credibility is found in 20 C.F.R. § 416.929(c)(4). A claimant's symptoms, then, may be discredited "unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 416.929(b); *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

The list of "acceptable medical sources to establish whether [a claimant] has a medically determinable impairment" includes licensed physicians, but does not include nurses. 20 C.F.R. § 404.1513(a). Though the ALJ "may also use evidence from other sources to show the severity of [a claimant's] impairments," this evidence is "entitled to consideration as additional evidence" and

does not need to be given the same weight as evidence from acceptable medical sources. 20 C.F.R § 404.1513(d)(1); *Hatton v. Comm'r of Soc. Sec.*, 131 Fed. App'x 877, 878 (3d Cir. 2005). Factors to consider in determining how to weigh evidence from medical sources include (1) the examining relationship, (2) the treatment relationship, including the length, frequency, nature, and extent of the treatment, (3) the supportability of the opinion, (4) its consistency with the record as a whole, and (5) the specialization of the individual giving the opinion. 20 C.F.R. § 404.1527(c).

## IV.   DISCUSSION

### A. Summary of ALJ Dunn's Decision

On August 22, 2013, ALJ Dunn issued a decision finding that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act. (R. 13-22.) ALJ Dunn also denied Plaintiff's SSI application on the basis that Plaintiff was not disabled under section 1613(a)(3)(A) of the Social Security Act. (*Id.*) At step one, ALJ Dunn found that Plaintiff had engaged in substantial gainful activity in 2009, but declined to make a determination for 2010, as Plaintiff was "unable to provide specific months she worked." (*Id.* 15.) ALJ Dunn did find that, despite this previous work activity, there had been a continuous twelve-month period where Plaintiff had not engaged in substantial gainful activity, thereby satisfying step one. (*Id.* 16.) At step two, ALJ Dunn found that Plaintiff suffered from "mood disorder, learning disorder, borderline intelligence, post-traumatic stress disorder, migraine headaches, panic disorder, cervical and lumbosacral degenerative disc disease, diverticulosis, cholelithiasis and [a] history of asthma." (*Id.* 16 (citing Exhibits 2F (University Behavioral Outpatient Hospital Records 6/3/2011 to 2/10/12), 4F (Dr. Pankaj Shirolawala Treatment Records 10/14/2009 to 3/26/2012), 8F (University Behavioral Outpatient Hospital Records 10/26/12 to 5/24/2013).) At step three, however, the ALJ found that these impairments do not meet or medically equal in severity any of the clinical criteria for the

Listed Impairments. (R. 16 (citing to Plaintiff's medical records of her treating physicians).) ALJ Dunn determined that Plaintiff had the RFC to perform "light work." (*Id.* 17.) But, ALJ Dunn also found that this RFC was "limited to standing/walking up to 4 hours in an 8 hour workday; occasionally climb, kneel or crouch; frequently balance or stoop; no crawling; no working around temperature extremes; and the claimant is limited to simple, routine work; and occasional public and co-worker contact." (*Id.* 17.) At step four, thus, ALJ Dunn determined that Plaintiff was unable to perform her past work, which was semi-skilled and medium to heavy in exertional level. (*Id.* 20) At step five, ALJ Dunn determined that there were a significant number of jobs in the national economy wherein the Plaintiff could work, despite her limitations. (*Id.* 21.) Therefore, ALJ Dunn concluded that Plaintiff was not disabled as defined in the Social Security Act, and was not eligible for Disability Insurance Benefits as well as supplemental security income. (*Id.* 22.)

### B. Analysis

Plaintiff's briefing does not clearly identify the basis for her arguments as her headings do not appear to be consistent with the underlying analysis. Her "Argument" appears to be that ALJ Dunn erred at step three by determining that her impairments either singularly or in combination "preclude[s] her from engaging in substantial gainful activity." (Pl.'s Br. at 10.) ALJ Dunn, however, engaged in a detailed step three analysis including identifying the sections to which she compared Plaintiff's impairments and an analysis of the severity of Plaintiff's various impairments by reference to Plaintiff's treating physician medical records and Plaintiff's functional reports. (R. 16-17.) Plaintiff on the other hand only makes general arguments about the medical evidence and does not provide any specific arguments for how ALJ Dunn's step three analysis was deficient. There is no reference to the sections that ALJ Dunn used for comparison, or how they were not

appropriate or were not appropriately compared.  Instead, Plaintiff attacks various individual findings of the ALJ.  The Court, thus, has addressed Plaintiff's specific arguments.

Plaintiff argues that the ALJ improperly evaluated the medical evidence and gave an incomplete hypothetical to the vocational expert (a step five issue).  (Pl.'s Br. at 11, 18.)  When read as a whole, although not clear, it appears that all of Plaintiff's arguments are aimed at the ALJ's findings that Plaintiff can perform "light work" with limitations.  Plaintiff argues that the limitations as defined did not fully capture her impairments.  Specifically, Plaintiff argues: (1) that ALJ Dunn "failed to give proper credence to the [subjective] complaints of Ms. Rivera concerning her pain, physical limitations of motion and function, fatigue, asthma, migraine headaches and mental impairments, including, depression, anxiety, suicidal and violent ideations, learning disabilities, ADHD, PTSD and functional illiteracy" (*id.* at 11); (2) that the ALJ made findings that were contrary to the medical evidence, in particular regarding Plaintiff's intelligence and panic disorder (*id.* at 12-13); (3) that the ALJ improperly failed to order a neuropsychological evaluation (*id.* at 13-14); (4) "[t]he only medical and/or physical assessments contained in the record were those of the Administrative Law Judge which does not fulfill the ALJ's duty" (*id.* at 14); and (5) the ALJ was obligated—but did not-"investigate the claimant's mental impairments" (*id.*).  Finally, Plaintiff argues that had her limitations been accurately assessed, and the ALJ relied on the testimony of the vocational expert related to what Plaintiff views as the appropriate hypothetical, Plaintiff would have been determined to be disabled.  (*Id.* at 18-20.)  Because the issue of what the ALJ relied on is core to all of these arguments, the Court will address number four above first, and the rest in turn.

1. <u>The ALJ substituted speculative assessments of Plaintiff's condition above Plaintiff's treating physicians (Argument 4).</u>

Plaintiff argues that ALJ Dunn substituted her own view of the records over the medical judgments of Plaintiff's treating physicians. (*See, e.g., id.* at 14.) The Court disagrees. As ALJ Dunn made clear, in this case "there are no treating physician *assessments*." (R. at 20 (emphasis added).) There are, however, numerous medical records from Plaintiff's treating physicians, which were reviewed by ALJ Dunn. (*See* R. 15-20, 262-445.) Although state agency medical experts did not examine Plaintiff, they reviewed Plaintiff's medical records and made assessments based on that review. (*Id.* 20.) ALJ Dunn stated that she placed "[g]reat weight" on these medical expert assessments. (*Id.*) And in fact, ALJ Dunn's RFC finding was based on the findings of these consultants. (*See id.* 66-70, 78-8279-82, 90-92, 100-102.) Thus, contrary to Plaintiff's framing, ALJ Dunn did not make up the RFC limitations out of whole cloth. ALJ Dunn analyzed the medical records and Plaintiff's subjective testimony in light of the assessments. (*Id.* 20.) ALJ Dunn found that the objective medical evidence was consistent with the state medical consultant assessments. Plaintiff, on the other hand, does not point to any *opinion* of her treating physicians that is in conflict with this determination. Instead, she takes snippets from various medical reports—often of her own subjective reporting and often from one record without acknowledging conflicting statements in other records at different treatment times—and argues that the ALJ did not fully credit her complaints.

For these reasons, the Court rejects Plaintiff's arguments as a broad proposition. The Court, however, does find that the ALJ failed to adequately explain the basis for certain statements or explain certain inconsistencies. For this reason, as more fully described below, the Court will remand the matter for a more thorough explanation of certain aspects of the decision.

> 2. ALJ's failure to fully credit Plaintiff's subjective complaints and certain allegedly inconsistent findings (Arguments 1 and 2).

An ALJ is not required to accept Plaintiff's testimony without question. The ALJ has discretion to evaluate Plaintiff's credibility and render an independent judgment in light of the medical findings and other evidence regarding the true extent of her alleged symptoms. However, particularly with respect to mental impairments, "an ALJ may not make speculative inferences from medical reports." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

The Court disagrees with Plaintiff, however, that ALJ Dunn failed to appropriately consider Plaintiff's subjective complaints in light of the medical evidence. As noted above, Plaintiff's arguments are primarily scattershot citation to various comments in the records taken out of context and without recognition of the extended period of time covered by the records. Plaintiff's arguments also place undue emphasis on Plaintiff's subjective complaints without explaining inconsistent medical notes. For example, an isolated statement made in an early 2011 report is viewed differently in the context of the records as a whole or in light of subsequent differing reports.

ALJ Dunn acknowledged and analyzed Plaintiff's subjective complaints in light of the medical evidence. However, ALJ Dunn made some statements in the decision that—while consistent with the RFC finding of the state agency consultants—are inconsistent with aspects of the medical records. Although ALJ Dunn may have accounted for the items, because of the inadequate reference and/or explanation, the Court finds that the potential contradictions need further explanation.

ALJ Dunn found:

> [T]he undersigned finds that claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

(R. 18.)  However, the Disability Determination Explanations contain the following question and answer:

> Q: Are the individual's statements about the intensity, persistence, and functionally limiting effects of the symptoms substantiated by the objective medical evidence?
> A: Yes.

(*See, e.g.*, *id.* 66.)  This statement is in the same reports wherein the state consultants opined on Plaintiff's RFC and limitations, which ALJ Dunn accorded great weight.  Thus, there may be an explanation for the apparent inconsistency, and/or the inconsistency may be a distinction without a difference as to the RFC conclusion.  But, without further explanation, the finding by ALJ Dunn and the assessments do not appear consistent on this point.

Plaintiff also takes issue with the ALJ's finding that "there is no diagnosis of a panic disorder."  (*Id.* 19.)  At least some medical records include a diagnosis of "panic disorder with agoraphobia."  (*See, e.g. id.* 267.)  And, as noted above, at step two ALJ Dunn listed panic disorder as a severe impairment of Plaintiff's.  (*See id.* 16.)  Thus, it appears that ALJ Dunn may have factored in panic disorder and/or attacks into her analysis, but given the conflicting statements, additional explanation is required.

Similarly, Plaintiff takes issue with ALJ Dunn's finding that "[t]here is no evidence of sub average intelligence."  (*See id.* 19.)  Various medical records indicate that Plaintiff has below average intellectual functioning.  (*See, e.g., id.* at 390-397.)  On the other hand, Plaintiff previously performed semi-skilled work—a level of work higher than that used by ALJ Dunn.  (*Id.* 17, 20.)  Again, this may be a distinction without a difference as the state consultant analysis addressed the

level of functioning and ability to understand simple tasks (along with Plaintiff's self-reported functioning), and ALJ Dunn used an RFC for only simple work. However, this statement by ALJ Dunn requires further explanation.

3. The ALJ's failure to order a neuropsychological evaluation or otherwise investigate Plaintiff's mental impairments (Arguments 3 and 5).

Plaintiff argues that "[t]he record will show that University behavioral Healthcare's records contained a statement that Samary is functioning at a very low intellectual level and needs to be assess in a neuropsychological evaluation." (Pl.'s Br. at 13 (citing R. 265).) The medical record at page 265 of the Record is from an "Initial Evaluation" and actually states: "Referral for neuropsychological testing *if* cognitive deficits continue to impair patient's functioning." (R. 265 (emphasis added).) Although Plaintiff overstates this "recommendation," and does not provide analysis from the medical records as a whole, the Court also finds that ALJ Dunn should have addressed Plaintiff's request for additional testing (*see id.* 8) and provided an explanation for why no such additional information was necessary in the circumstances of this case.

4. The ALJ's reliance on an improper hypothetical.

A vocational expert ("VE"), Rocco Meola, also testified at the July 1, 2013 hearing. The Mr. Meola testified that, given Plaintiff's RFC including limitations, Plaintiff could perform occupations such as document prep worker and scale operator, and that such jobs existed in sufficient number in the national economy. (R. 58-59.) Plaintiff argues that the ALJ relied on an incomplete hypothetical because this opinion on which she relied did not factor in all of Plaintiff's limitations. (Pl.'s Br. at 18-19.) In particular, when Mr. Meola was asked by Plaintiff's counsel if Plaintiff could perform the jobs identified by him if he also included a limitation of "being off task for 20 percent of the work day," he testified that such limitation would preclude Plaintiff being able to perform any job in the competitive job market. (*Id.* 59.) Plaintiff argues that the ALJ's

decision to ignore this testimony or to provide an explanation for failing to credit it was error. Plaintiff cites to no opinion evidence in the record indicating that such a limitation was appropriate in this case, and it appears to be based on Plaintiff's subjective complaints. However, the Court also agrees that ALJ Dunn did not address this issue or adequately explain why she did not credit this testimony and/or find it to be an appropriate hypothetical.

## V.   CONCLUSION

For the foregoing reasons, the matter is remanded for further consideration by the ALJ in accordance with this Opinion.  An appropriate order follows this Opinion.


DATED: December 9, 2015


JOSE L. LINARES
U.S. DISTRICT JUDGE